424 S.E.2d 385 (1993)
333 N.C. 221
In re Foreclosure of Deed of Trust of MICHAEL WEINMAN ASSOCIATES GENERAL PARTNERSHIP.
No. 430A91.
Supreme Court of North Carolina.
January 8, 1993.
*386 Byrd, Byrd, Ervin, Whisnant, McMahon & Ervin, P.A. by John W. Ervin, Jr. and Robert C. Ervin, Morganton, for petitioner-appellant.
Weinstein & Sturges, P.A. by L. Holmes Eleazer, Jr., Thomas D. Myrick and T. LaFontine Odom, Charlotte, for respondent-appellee.
LAKE, Justice.
This case arose upon an application to commence foreclosure pursuant to a power of sale in a deed of trust. It presents directly to this Court, as the essential issue, the extent of authority and responsibility of the Clerks of Superior Court in their consideration and determination of the four elements which must be found to exist under our power of sale foreclosure statute, N.C.G.S. § 45-21.16(d), before foreclosure may commence. The specific portion of the subsection involved in this case is element (iii) the "right to foreclose under the instrument." While this subject has been addressed peripherally, with some inconsistency over the years by the Court of Appeals since the enactment of N.C.G.S. § 45-21.16 in 1975, this issue has not heretofore been considered and determined by this Court.
On 19 June 1987, Michael Weinman Associates General Partnership (Weinman) and North Mecklenburg Associates executed a Contract of Sale in which Weinman agreed to buy from North Mecklenburg 402.67 acres consisting of Mecklenburg County tax parcels, XXX-XXX-XX, XXX-XXX-XX and XX-XXX-XX for $1,409,345 or $3,500 per acre. The exact purchase price was to be adjusted based upon a survey to determine the actual acreage. The parties agreed in the contract that if Weinman elected to have North Mecklenburg finance a portion of the property, North Mecklenburg would permit Weinman to make a payment of twenty-five percent of the final purchase price at the time of closing, and three successive payments of twenty-five percent at the end of each year following closing, plus accumulated interest at the time of each such payment. The contract further provided:
Should this option be exercised, Buyer agrees to prepare a land use map showing the property being divided into four parcels with equal road frontage.
One parcel representing approximately 25% of the land on one end of the property would be released at closing, and additional contiguous parcels would be released at one year intervals as payments outlined above are made.
Weinman elected to have North Mecklenburg finance a portion of the property in accordance with these provisions of the contract.
At the time of closing on 7 April 1988, North Mecklenburg conveyed to Weinman 399.449 acres by a deed recorded 8 April 1988. The finally determined purchase price of the property bought by Weinman from North Mecklenburg was $1,400,556.50. Upon receipt of the deed, on 7 April 1988, Weinman made a payment of $350,139.13, representing twenty-five percent of the purchase price, and executed and delivered to North Mecklenburg a promissory note in the amount of $1,050,417.37 for the balance of the purchase money, together with a purchase money deed of trust for the property securing said promissory note. Upon acceptance of the initial twenty-five percent payment, North Mecklenburg executed and delivered to Weinman a release of the first tract, Tract 1, from the Deed of Trust. A map of the approximately 400 acres and the areas designated for each subsequent release was agreed to at the time of closing. Tracts 2, 3 and 4 were to be released at the time of each subsequent annual payment. Each of *387 the four tracts was designated in the original map as contiguous and equal in size. The Deed of Trust provided for the release of the remaining three-fourths acreage as follows:
The Beneficiary agrees to release additional tracts of land from the Deed of Trust in direct proportion to principal payments made by the Grantor to the Beneficiary under the Promissory Note which is secured by this Deed of Trust. As to such Releases, the Grantor and the Beneficiary have agreed as follows: Approximately 100 acres of land shall be released on each of the principal payment dates, to wit, April 7, 1989, April 7, 1990, and April 7, 1991.
On 7 April 1989, pursuant to the Contract and the Deed of Trust, a second payment of $444,676.68 was made by Weinman to North Mecklenburg for Tract 2. This payment represented a principal payment of $350,139.12, plus accrued interest through 7 April 1989 amounting to $94,537.56. After making this payment, Weinman never received or was tendered a release of Tract 2, which under the terms of the contract and the Deed of Trust, was agreed to be released simultaneously with the second payment. North Mecklenburg acknowledged this payment by letter reading:
Receipt is hereby acknowledged of Michael Weinman Associates General Partnership check no. 1019, dated April 6, 1989, payable to North Mecklenburg Associates, in the amount of $444,676.68, representing the first payment due as of today on the above referenced Promissory Note. It is understood and agreed that the said check represents a principal payment of $350,139.12 plus accrued interest at 9% on $1,050,417.37 through April 7, 1989, of $94,537.56.
Since the description and measurement of Tracts 2, 3 and 4 on the map had been approximations, a survey was required to obtain an exact description for the release document. Weinman had not completed the legal survey at the time it submitted the second payment. North Mecklenburg stated to Weinman in its letter that when the survey was completed, then Tract 2 would be released.
Weinman failed to make the third payment due 7 April 1990. Under the terms of the Promissory Note, North Mecklenburg notified Weinman by letter dated 23 April 1990 that the Note and Deed of Trust were in default for nonpayment of principal and interest. North Mecklenburg accelerated payment and had a substitute Trustee institute foreclosure proceedings under the power of sale contained in the Deed of Trust. The Notice of Hearing for Commencement of Foreclosure Proceedings stated that the default enabling foreclosure was the failure to make payments of principal and interest as required by the Note and Deed of Trust. Prior to the hearing before the Clerk of Court pursuant to N.C.G.S. § 45-21.16, Weinman presented to North Mecklenburg and the Trustee a release for Tract 2. North Mecklenburg refused to release Tract 2.
On 28 June 1990, at the hearing before the Clerk of Superior Court, Mecklenburg County, the Clerk denied North Mecklenburg's application for authority to proceed with foreclosure under the power of sale in the Deed of Trust, finding the trustee had failed to show he had a right to foreclose on all three tracts, Tracts 2, 3 and 4. North Mecklenburg then appealed the Clerk's ruling to the superior court for a de novo hearing. On the morning prior to the hearing before the superior court, a representative of North Mecklenburg and its attorney checked the records of the Mecklenburg County tax office. They discovered that $1,739.61 of the 1988 ad valorem taxes on a small portion of the approximately 400 acres had not been paid. Before this discovery, neither Weinman nor North Mecklenburg knew of the omission. Ad valorem taxes for 1989 had been paid by Weinman.
The superior court denied North Mecklenburg's Petition For Commencement of Foreclosure Proceedings. The Court of Appeals subsequently affirmed the trial court, ruling that the Clerk of Superior Court and the superior court had the authority to consider the defense raised by *388 Weinman that North Mecklenburg should have released Tract 2 from the Deed of Trust and, therefore, no longer had legal title to Tract 2.

A.
North Mecklenburg assigns as error the trial court's denial of North Mecklenburg's authority to proceed under the terms of the Deed of Trust to conduct a sale pursuant to the provisions of N.C.G.S. § 45-21.1 to .33. North Mecklenburg contends that the Clerk of Superior Court had no authority to determine whether there should have been a release of Tract 2. Thus, the precise issue presented is whether evidence that property is no longer or should no longer be secured by a deed of trust qualifies as a defense which can be considered by the Clerk in making the four findings required by N.C.G.S. § 45-21.16(d).
In 1975, a three judge Federal District Court panel sitting in the Western District of North Carolina declared our Power of Sale Foreclosure Statute unconstitutional. Turner v. Blackburn, 389 F.Supp. 1250 (W.D.N.C.1975). After determining that there was state action in regards to the Fourteenth Amendment, the court in Turner held that the then existing power of sale statute did not provide adequate notice and an opportunity to be heard under the United States Constitution. Id. The court ruled that actual notice to the mortgagor and an opportunity for the foreclosed party to be heard is required to satisfy the Due Process requirements under the Fourteenth Amendment. As a result of the Turner decision, our legislature amended the statute into what is now Chapter 45, Article 21, Section 16 effective 6 June 1975.
Our holding is consistent with the concerns of the court in Turner. To satisfy the requirement that the foreclosed party has the right to be heard, the Clerk of Superior Court should have the authority to determine who has legal title to property about to be foreclosed. In the case sub judice, that determination was made by deciding whether North Mecklenburg should have released Tract 2 as security under the Deed of Trust.
A power of sale is a contractual arrangement in a mortgage or a deed of trust which "confer[s] upon the trustee or mortgagee the `power' to sell the real property mortgaged without any order of court in the event of a default." James A. Webster, Jr., Webster's Real Estate Law in North Carolina § 281, at 331 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 3d ed. 1988). The parties have agreed to abandon the traditional foreclosure by judicial action in favor of a private contractual remedy to foreclose. "A power of sale provision in a deed of trust is a means of avoiding lengthy and costly foreclosures by action." In re Watts, 38 N.C.App. 90, 94, 247 S.E.2d 427, 429 (1978); Turner v. Blackburn, 389 F.Supp. 1250 (W.D.N.C. 1975). N.C.G.S. § 45-21.16(d) provides the elements parties must prove before the Clerk of Superior Court to have their application for foreclosure granted. N.C.G.S. § 45-21.16(d) provides:
The hearing provided by this section shall be held before the clerk of court in the county where the land, or any portion thereof, is situated. Upon such hearing, the clerk shall consider the evidence of the parties and may consider, in addition to other forms of evidence required or permitted by law, affidavits and certified copies of documents. If the clerk finds the existence of (i) valid debt of which the party seeking to foreclose is the holder, (ii) default, (iii) right to foreclose under the instrument, and (iv) notice to those entitled to such under subsection (b), then the clerk shall authorize the mortgagee or trustee to proceed under the instrument, and the mortgagee or trustee can give notice of and conduct a sale pursuant to the provisions of this Article.
N.C.G.S. § 45-21.16(d) (1991).
Judge (now Justice) Whichard writing for the Court of Appeals stated that "[l]egal defenses which negate any of these requisite findings [(the four factors set out in N.C.G.S. § 45-21.16)] are properly considered at this hearing.... [T]o preclude presentation *389 of legal defenses to the four requisites to authorization of sale would render the hearing provided by this statute a largely purposeless formality." In re Foreclosure of Deed of Trust, 55 N.C.App. 373, 375-376, 285 S.E.2d 615, 616, aff'd, 306 N.C. 451, 293 S.E.2d 798 (1982). It is our conclusion that determining which property is legally secured by a deed of trust is a proper issue and element of proof before the Clerk of Superior Court. Therefore, if a party contends that the property is not secured, or should no longer be secured by the deed of trust, then such contention may be raised as a defense to the four requisite findings under N.C.G.S. § 45-21.16(d).
In the case sub judice, only element (iii), a "right to foreclose under the instrument," is in dispute. North Mecklenburg contends that a "right to foreclose under the instrument" should be read narrowly so that if a deed of trust simply contains the requisite wording constituting a power of sale in the event of a default then there is per se a "right to foreclose under the instrument." We disagree. This Court has previously held that foreclosure under a power of sale in a mortgage is "not favored in the law, and its exercise by the mortgagee `will be watched with jealousy.' " Spain v. Hines, 214 N.C. 432, 435, 200 S.E. 25, 28 (1938) (quoting 41 C.J. Mortgages § 1342, at 924 (1926)). North Carolina case law also requires that "[d]oubts as to the interpretation of the statutes should be resolved not in favor of the unrestricted power of the trustee or the automatic loss of equitable title, but in favor of preserving the equitable title of the mortgagor." Sprouse v. North River Ins. Co., 81 N.C.App. 311, 316, 344 S.E.2d 555, 559, disc. rev. denied, 318 N.C. 284, 348 S.E.2d 344 (1986); Spain v. Hines, 214 N.C. 432, 200 S.E. 25. In order for a trustee under a Deed of Trust to have any right to foreclose on a parcel of land, the Deed of Trust must encompass the subject property as security for the debt owed by the mortgagor.
Weinman has conceded during all stages of this action that North Mecklenburg has a right to foreclose on Tracts 3 and 4. Weinman never made payment on either of these tracts of land. In fact, prior to the foreclosure hearing on 28 June 1990, Weinman presented a Deed in Lieu of Foreclosure to North Mecklenburg. This tendered Deed conveyed the approximately 200 acres comprising Tracts 3 and 4. North Mecklenburg refused to accept the tendered Deed in Lieu Of Foreclosure.
Weinman contends that a default on Tracts 3 and 4 does not authorize North Mecklenburg to refuse to release Tract 2 and to proceed to include Tract 2 in the foreclosure. We agree. On 7 April 1989, Weinman made full payment on Tract 2. North Mecklenburg sent Weinman a letter on that same date acknowledging "that Michael Weinman Associates General Partnership, is entitled to have an acreage tract of land released from the above Deed of Trust in accordance with the understanding reached at the closing of this transaction one year ago." Because survey work on the land had not been completed, North Mecklenburg did not issue a release but further stated in its letter "[w]e agree to execute a Release containing such a proper legal description promptly upon presentation to us." Weinman, on the day of the foreclosure hearing before the Assistant Clerk of Superior Court, presented to North Mecklenburg such a release to Tract 2. North Mecklenburg, notwithstanding its statement in its letter, the agreement and Deed of Trust, and its acceptance of full payment for Tract 2, nevertheless refused to execute the release.
North Mecklenburg contends that the Clerk of Superior Court and the court on appeal de novo do not have the authority to consider and determine whether North Mecklenburg should or should not have issued a release to Tract 2, or whether it had the legal "right to foreclose under the instrument" on Tract 2, along with Tracts 3 and 4. North Mecklenburg asserts that whether Weinman is or is not entitled to a release of the second tract does not negate the "right to foreclose" on the remaining property in the third and fourth tracts. North Mecklenburg further states that the issue with respect to the entitlement to a release of the second tract is not a proper *390 legal defense since it does not negate the right to foreclose element under N.C.G.S. § 45-21.16(d)(iii). It asserts that only legal defenses that negate one or more of the four elements required under N.C.G.S. § 45-21.16(d) may be asserted and considered at the hearing before the Clerk. North Mecklenburg contends, for example, that a legal defense would exist if the Deed of Trust or Promissory Note did not contain a power of sale provision. North Mecklenburg contends that the right to a release is not a proper legal defense. Furthermore, North Mecklenburg argues that the proper procedure for resolution of the dispute over the release should have been in a separate action to enjoin the foreclosure pursuant to N.C.G.S. § 45-21.34.
For reasons of judicial economy and efficient resolution of disputes, we hold that N.C.G.S. § 45-21.16(d) provides a more appropriate process to resolve who truly is the equitable or legal owner of Tract 2 or any property sought to be sold under foreclosure. The "right to foreclose under the instrument" is more than a mere recitation of words specifying a power of sale. The Clerk of Court must decide whether the person given the power of sale under the Deed of Trust has a "right to foreclose under the instrument." In making this determination, the Clerk must decide, as was correctly decided in the instant case, who is the equitable or legal owner of Tract 2. It would be inefficient and an unnecessarily burdensome requirement for parties to have to file a subsequent action in the superior court to decide whether the land being foreclosed upon is secured by the Deed of Trust after the parties have already appeared before the Clerk of Court. We do not see the Clerk of Court in a preforeclosure hearing performing a mere perfunctory role. Turner v. Blackburn, 389 F.Supp. 1250, 1257 (W.D.N.C. 1975). While the parties are before the Clerk of Court, the Clerk should have the authority to determine not only whether there is a power of sale in the Deed of Trust, but also whether the property sought to be sold under foreclosure is still legally secured by the Deed of Trust. The same statute already provides a mechanism for appeal de novo in cases where the nonprevailing party believes the Clerk's decision is erroneous, in the event such party feels sufficiently aggrieved.

B.
An ancillary issue raised by this appeal is whether the failure to pay a small portion of the 1988 ad valorem property taxes defeats Weinman's right to a release of Tract 2. North Mecklenburg's contention is that the Deed of Trust requires the payment of taxes within thirty days after they accrue. A small portion of those taxes was not paid within that time in 1988. Thus, North Mecklenburg asserts at a time prior to the date for making the second release payment, the Deed of Trust was in default. Weinman's making of a timely release payment in April of 1989 did nothing to cure the default under the Deed of Trust for nonpayment of taxes; albeit, none of the parties were aware of the partial nonpayment of taxes. Moreover, North Mecklenburg contends, the nonpayment of taxes constituting default under the Deed of Trust precluded release of Tract 2 under the partial release provisions of the Deed of Trust whether at the April 1989 release payment date or any time thereafter. Thus, according to this argument, when default in the April 1990 payment occurred, North Mecklenburg was entitled to foreclose on all unreleased tracts.
At the outset, it is worth mentioning that neither party had knowledge of the omission of the payment of taxes until after the Clerk of Superior Court had made the determination and before the superior court heard the case. The superior court and Court of Appeals, vested with the knowledge of the nonpayment of a portion of the 1988 property taxes, still ruled that Weinman was entitled to a release on Tract 2, thereby denying North Mecklenburg's petition for foreclosure on Tract 2.
In the Deed of Trust Weinman covenanted as follows:
2. TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within *391 thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.
Weinman does not dispute that he failed to pay this portion of the 1988 property taxes within the thirty day provision under the Deed of Trust. Likewise, North Mecklenburg did not opt for paying the taxes and adding the amount to the total sum owed by Weinman. As stated, neither party knew of the omission.
The Deed of Trust further contains the following provision:
If, however, there shall be any default (a) in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date; or (b) if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or any failure or neglect to comply with the covenants, terms or conditions contained in this Deed of Trust or any other instrument securing the Note and such default is not cured within fifteen (15) days after written notice, then and in any such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction.... (Emphasis added.)
Before foreclosure proceedings could begin on Tract 2 for nonpayment of property taxes, according to the contract, Weinman had to be notified in writing of the nonpayment and afterward he had fifteen days to cure the default. Since Weinman promptly fulfilled his obligation of payment for Tract 2 before he was ever notified he was in default for nonpayment of taxes, the partial release provision does not come into play. It is at the time he is given written notice that the default permits foreclosure, not beginning in October 1988 when the taxes were due. If, as North Mecklenburg contends, Weinman is precluded from a release on Tract 2 because he is in default under paragraph 2 of the Deed of Trust, then North Mecklenburg is estopped from asserting this default by its own failure to abide by the Deed of Trust in giving written notice of the default. We conclude that Weinman is not denied its right to a release of Tract 2 for failure to pay a small portion of the 1988 ad valorem property taxes.
The determination of whether Weinman is entitled to a release is one of the types of "uncomplicated matters that lend themselves to documentary proof...." Mitchell v. W.T. Grant Co., 416 U.S. 600, 609, 94 S.Ct. 1895,1901, 40 L.Ed.2d 406, 415 (1974). The Clerk of Court has the ability and the authority to make this type of decision. We recognize that N.C.G.S. § 45-21.34 exists as a means of extraordinary injunctive relief. Our decision does not impair or modify that right to relief. Our decision rests upon the conclusion that the issue of whether the release should have been granted is a type of defense that under our law should be determined by the Clerk of Court, with such determination subject to de novo review by the superior court in the event the party failing to prevail before the Clerk feels sufficiently aggrieved.
Accordingly, the decision of the Court of Appeals is
AFFIRMED.